UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

| | | |
|---|---|---|
| YOUNGER BROTHERS INVESTMENTS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5:17-CV-317-JMH |
| v. | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| ACTIVE ENTERPRISES, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

This matter is before the Court upon Defendants' Motion to Dismiss [DE 4], in which they ask the Court to dismiss Counts I and II of the Complaint for lack of personal jurisdiction as to Defendant James Adamitis pursuant to Fed. R. Civ. P. 12(b)(2) and, generally, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has filed a Response [DE 5], stating its objections, and Defendants have filed a Reply [DE 7] in further support of their Motion to Dismiss. For the reasons stated in this Memorandum Opinion and Order, the Motion to Dismiss will be granted in part and denied in part.

**I.**

In its Complaint, Plaintiff avers that Anytime Fitness is a national company providing franchising opportunities for gyms.

Anytime Fitness gyms operate on a keycard access basis so that clients may access the gyms 24 hours a day, seven days a week. Defendant Active Enterprises, Inc. ("Active Enterprises"), a Delaware corporation with its principal place of business in Marina Del Rey, California, purchased a franchise opportunity in 2012 and operated an Anytime Fitness location in Nicholasville, Kentucky, until the franchise was sold to Plaintiff on December 19, 2016.

Active Enterprises had decided to sell its assets comprising the Nicholasville Anytime Fitness gym sometime in 2015, and James Adamitis, as an officer of Active Enterprises, entered into an agreement with Business Exchange, LLC, to market the assets. In late September 2016, R. Younger, who later became the sole member and manager of Younger Brothers Investments, LLC, an Indiana limited liability company, saw the listing and became interested in purchasing the franchise.

At about the same time, Eric Morosa, an employee of Active Enterprises, became aware that a new, competing gym, Workout Anytime, was set to open in Nicholasville in close geographic proximity to Anytime Fitness Nicholasville. He informed Adamitis at that time. On October 12, 2016, Adamitis sent an email to Active Enterprises employees at the Anytime Fitness Nicholasville facility suggesting a counter-marketing campaign

to deal with the competition by Workout Anytime. Adamitis also spoke to Nick Vankleeck, an Active Enterprises employees at the Anytime Fitness Nicholasville facility, about his concerns about competition from Workout Anytime.

During the pre-purchase due diligence investigation, R. Younger requested information about Anytime Fitness Nicholasville at various times. He received financial information and, working together with the bank financing the purchase, asked that Adamitis "describe[]/explain[]" "the local competition" for Anytime Fitness Nicholasville. Adamitis responded in a November 2, 2016, email by describing nearby Snap Fitness and Elite Fitness and a potential new "kids gym" to be opened in January or February 2017. He never mentioned the planned Workout Anytime facility.

Relying on the representations made by Active Enterprises and Adamitis, Younger agreed to purchase Anytime Fitness Nicholasville for $420,000.00, entering into an Asset Purchase Agreement on November 16, 2016. The Asset Purchase Agreement anticipated a closing on or before December 30, 2016, and included Active Enterprise's express representation that,

> Seller's representations, whether found in this Contract or made extra contractually, regarding the prior or current operation of the Business are materially true in each and every particular; that Seller's

3

>representations regarding the value of the Assets being purchased are materially true in each and every particular; that Seller knows its representations have been relied upon by Buyer in Buyer's decision to enter into this Contract; that the financial information supplied to Buyer is true and correct in every material respect and is an accurate presentation of the financial condition and operating results of the Business.

Prior to closing and pursuant to the terms of the Asset Purchase Agreement, R. Younger assigned his rights and obligations under the Asset Purchase Agreement to the newly created Younger Brothers Investments, LLC ("Younger Brothers").

In the meantime, on December 13, 2016, Vankleeck alerted Adamitis by text message to a "big blow[]" -- Cal Laboratory had cancelled their corporate account with Anytime Fitness Nicholasville, effective January 1, 2017. Adamitis wrote back, "Damn! Ok, that sucks! . . . Sucks on Cal Labs, I'll try to save that with Adam once we close, too hectic right now to handle anything other than this close[.]"

That same day in another text, Vankleeck asked Adamitis if R. Younger "[knows what he's getting himself into with January right around the corner and an uphill battle with [Workout Anytime]." Adamitis responded that Vankleeck should "ease him into workout anytime" and explained that he had withheld

information from Plaintiffs regarding the opening of Workout Anytime by discussing only "open comp[etition]."

The closing occurred on December 19, 2016, when Younger Brothers tendered the full purchase price with a combination of cash and financing obtained from a bank. When R. Younger visited the Anytime Fitness Nicholasville facility on December 22, 2016, multiple staff members told him that their biggest concern was the opening of Workout Anytime. Younger called Adamitis on December 26, 2016, asking why he had withheld that information. Adamitis said that he had not wished to "derail the deal" in the "eleventh hour." On December 30, 2016, on behalf of Younger Brothers, R. Younger sent an email to Adamitis demanding rescission of the Asset Purchase Agreement based on the provision of material misinformation during the pre-purchase due diligence investigation in order to induce Younger Brothers to proceed with the transaction despite the competitive landscape. Younger proposed that the parties rescind the transaction and that all assets be returned to Active Enterprises in exchange for a return of all purchase consideration. Active Enterprises rejected the offer in correspondence dated January 2, 2017.

Subsequently, Younger Brothers learned of the loss of the Cal Laboratory account. It also learned of financial

representations made pre-closing which gave the appearance that revenues and credit card benefits produced by Adamitis individually or by other entities which Adamitis manages or in which he holds an equity interest were produced by Anytime Fitness Nicholasville, inflating the revenues produced by the purchased assets. Finally, it learned of fraudulent billing practices undertaken by Anytime Fitness Nicholasville's employees acting at the direction of Adamitis which were intended to artificially inflate revenues produced by the purchased assets while potentially defrauding insurance providers and the federal government.

Count One avers negligent and/or intentional misrepresentation against Active Enterprises and Adamitis, individually. Plaintiff avers that both Active Enterprises and Adamitis communicated or failed to correct material inaccuracies concerning financial information provided to Plaintiff and upon which Plaintiff justifiably relied when Active Enterprises and Adamitis did not disclose the loss of a significant account by Active Enterprises prior to the closing on the sale of Anytime Fitness Nicholasville; failed to disclose information and actively concealed knowledge about the impending opening of a significant fitness competitor nearby; and reported revenues and benefits from Adamitis's other businesses as revenues and

6

benefits arising out of the operation of Anytime Fitness Nicholasville, thus distorting the revenues and benefits associated with ownership of Anytime Fitness Nicholasville. Count Two is substantially the same, averring negligent or intentional omission of information, as described in Count One, by Active Enterprises and Adamitis, individually.[1]

**II.**

In ruling on Defendants' Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F2d 555, 559 (6th Cir. 2008). The Court is not bound to accept as true "recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] Count Three avers a breach of the Asset Purchase Agreement by Active Enterprises. Count Four seeks a declaratory judgment regarding Plaintiff and Active Enterprises' rights and duties under the Asset Purchase Agreement.

7

inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"Generally, at the motion to dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 466 (6th Cir. 2014). However, "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment." *Id*.

Additionally, the Court, in this diversity case, applies Kentucky's substantive law. *See Erie R.R. Co. v. Tompkins,* 58 S.Ct. 817, 822 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *see also Legg v. Chopra,* 286 F.3d 286, 289 (6th Cir.2002) ("In federal diversity actions, state law governs substantive issues [.]"). The parties do not dispute that Kentucky law applies and have applied Kentucky law in constructing their own arguments.

**IV.**

The Court considers, first, whether it has personal jurisdiction over Defendant Adamitis, who does not live in Kentucky, has never done business in his individual capacity in Kentucky, and is a resident and citizen of California. "When a district court acts on a defendant's motion to dismiss for lack of personal jurisdiction, without having had an evidentiary hearing, the plaintiff only needs to make a prima facie showing of jurisdiction to avoid the motion." *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592, 598 (E.D. Ky. 2006) (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)). On the face of the Verified Complaint, Younger Brothers' allegations meet this standard, both under the long arm statute as codified in Chapter 454 of the Kentucky Revised Statutes, and measured generally under Federal due process considerations.

The Kentucky long arm statute, consistent with due process considerations, allows for the exercise of personal jurisdiction over a person who, directly or by and through an agent:

1. Transact[s] any business in this Commonwealth;

2. Contract[s] to supply services or goods in this Commonwealth;

3. Caus[es] tortious injury by an act or omission in this Commonwealth;

> 4. Caus[es] tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth ….

KRS 454.210.

Plaintiffs would have this Court believe that Adamitis operated a business in Kentucky and then sold the entirety of the assets of that business, injuring Plaintiff in the process by virtue of misrepresentations that he made about the business. The facts averred support this contention in part. Certainly, Plaintiff avers that Active Enterprises operated a business in Kentucky and sold the entirety of the assets of that business. Whether Adamitis himself operated a business in Kentucky is a question of law which would demand far more information than the Complaint contains. However, it is clear that Adamitis communicated directly with Younger about the sale and made many representations concerning the financial health and the competitive landscape for Anytime Fitness Nicholasville. While Adamitis argues that the corporate structure of that business and his respect for those formalities insulate him from liability arising out of actions that he took on behalf of the

10

corporation, this does not shield him from the reach of Kentucky's long-arm statute. *See Johnson v. Cormney*, 596 S.W.2d 23, 28 (Ky. App. 1979) (holding that Kentucky long-arm statute conferred personal jurisdiction over a civil defendant in a fraud action where the Kentucky-centered contacts were limited to purchasing a Kentucky-based business through a North Carolina company), *overruled on other grounds by Marshall v. City of Paducah*, 618 S.W.2d 433 (Ky. App. 1981); *see also Audiovox Corp. v. Moody*, 737 S.W.2d 468 (Ky. App. 1987) (New York corporation which had not qualified to transact business in Kentucky and which had no Kentucky operations would nevertheless be subjected to long arm jurisdiction); *compare Guy v. Layman*, 932 F. Supp. 180 (E.D. Ky. 1996) (passive investor would not be subject to long arm jurisdiction based on partnership's purchase of Kentucky-based business). Here, Plaintiff avers that Defendant Adamitis made representations concerning the business which prompted it to purchase its assets, located in Kentucky.

The Court concludes that the exercise of specific jurisdiction, "which exposes the defendant to suit in the forum state only on claims that "arise out of or relate to" a defendant's contacts with the forum," is appropriate on the averments before it. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (citing *Helicopteros*

*Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414–415 & nn. 8-10 (1984); and *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). The Court considers the following factors:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Crouch v. Honeywell Int'l, Inc.*, 682 F. Supp. 2d 788, 793 (W.D. Ky. 2010) (citing *SouthernMach.Co. v. Mohasco Indus., Inc.*, 401 F.2d 381 (6th Cir. 1968)).

The first prong is satisfied where there is "purposeful availment" of the forum by the affected party, such that that they can reasonably anticipate being haled into court in the forum in connection with those activities:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 … (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 … (1984).

12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). Where the contacts with the forum state result from actions by the defendant himself, even where those contacts do not include physical presence, the first prong is satisfied. *Id.* at 475-76; *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Here, Plaintiff avers that Adamitis directed the marketing and business activities and, eventually, disclosures relevant to the operations of that business in the sale of the assets of Anytime Fitness Nicholasville (located in Kentucky) from his location, wherever it might be. These contacts were neither random nor fortuitous. Rather, Adamitis purposefully availed himself of the benefits of engaging in activity which had a direct impact in Kentucky – on site at Anytime Fitness Nicholasville.

The second prong is satisfied where "the operative facts of the controversy [now at bar] arise from the defendant's contacts with the [forum] state." *Intera Corp. v. Henderson*, 428 F.3d 605, 617 (6th Cir. 2005). This is clearly the case.

Where the first two prongs are satisfied, it can be inferred that the exercise of jurisdiction would be reasonable. *Crouch*, 682 F. Supp. 2d at 794. Litigating in Kentucky is no more burdensome than making representations to a potential purchaser of assets located here. Moreover, "when minimum

13

contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 114 (1987)). Adamitis made a conscious choice to engage in communications with Active Enterprises employees based in Kentucky, providing them directions, urging them to make representations, and making representations himself which had a profound effect with respect to a transaction regarding assets located in this forum and presumably received a substantial pecuniary benefit from doing so. The tradeoff for that benefit is the burden of litigating in a distant forum, so long as the law and due process permit it, and they do. The Court might reach a different conclusion Adamitis was truly disconnected from the forum such that the only connection for him individually could be traced through personal jurisdiction over Active Enterprises. That is not, however, the case, and the exercise of personal jurisdiction over Adamitis is appropriate on the facts averred.

## IV.

Defendants next argue that Plaintiff's fraud and negligent misrepresentation claims against Active Enterprises are barred as a matter of law by the economic loss rule, which prohibits

14

"tort recovery for economic losses absent contractual privity." *Cincinnati Ins. Cos. v. Staggs & Fisher Consulting Eng'rs*, 2013 Ky. App. Unpub. LEXIS 227, at *1 (Ky. Ct. App. Mar. 15, 2013). Under the rule, economic losses—meaning losses that do not involve personal injuries or damage to "other property"—are recoverable only through the parties' contract. *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 738 (Ky. 2011) (adopting the economic loss rule in Kentucky). The rule "recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract." Id. at 738. With respect to the claims against Active Enterprises, the Court agrees.

Further, while Defendants assert that the economic loss rule precludes Younger Brothers from pursuing any tort claims against Adamitis individually, Adamitis has no contract with Younger Brothers, and the economic loss rule does not apply.

**V.**

The question remains, then, whether the corporate form and his role within it as an officer of Active Enterprises protects Adamitis from liability for misrepresentations he personally made to Younger or, by extension, Younger Brothers. Assuming his conduct breaches duties entirely independent of any contract, he

can be held personally liable for his fraudulent misrepresentations, separate and apart from any claims against Active Enterprises. *Smith v. Isaacs*, 777 S.W.2d 912 (Ky. 1989).

In *Isaacs*, the Kentucky Supreme Court stated

> [T]he issue is whether [an individual's] position as an officer or shareholder in [a] corporation immunizes him from tort liability in circumstances where he would be otherwise liable if he were not a shareholder. <u>It should be obvious that it does not</u>.

*Id.* at 914 (emphasis added). The *Isaacs* court went on to explain that "the agent of a corporation, albeit a principal shareholder and officer of the corporation, is personally liable for a tort committed by him although he was acting for the corporation." *Id.* (quotations and citations omitted) (denying motion to dismiss).

Plaintiff's claims are based upon Adamitis' duty not to make material misrepresentations under certain circumstances, and this duty stands independent of any contractual duties owed to Plaintiff by Active Enterprises. *See Presnell Const. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004) (holding, under Kentucky law, a construction manager had an independent duty not to supply false information to the plaintiff, and thus, the plaintiff's complaint stated a cause of

action for negligent misrepresentation, even though there was no privity of contract between plaintiff and construction manager); cf. *Mulch Mfg., Inc. v. Advanced Polymer Sols, LLC*, 947 F. Supp. 2d 841, 857 (S.D. Ohio 2013) (denying individual defendant's motion for summary judgment on fraud cause of action because plaintiff's allegations are all based on "separate duties … independent from any contractual obligation in this case—not to engage in deceptive, misleading, and/or fraudulent practices in the course of their business relationships" under Ohio law). An individual, when acting for and on behalf of a corporate entity, has an individual duty not to supply false information. *Presnell*, 134 S.W.3d at 583. Kentucky has adopted § 552 the Restatement (Second) of Torts, which sets the standard for the tort of negligent misrepresentation and provides that one who, in the course of a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care in obtaining or communicating the information. *Id.* In instances such as this, where the plaintiff has pled intentional and/or negligent misrepresentation by a party acting for or on behalf of a corporate entity, "the tort of [intentional or] negligent

misrepresentation defines an independent duty for which recovery in tort for economic loss is available." *Id.* Adamitis is not shielded from liability based upon representations that he made himself, simply because they were made on behalf of or in connection with a business entity. The Asset Purchase Agreement is by and between Younger Brothers and Active Enterprises and, it follows, that any waiver of tort claims that Adamitis reads into the "Representations Provision" [DE 4, Page ID #56] of that Agreement is not his to assert. There is no release of extra-contractual claims against Adamitis.

The Court is unpersuaded by Defendant Adamitis's reliance on *Tabler v. Wolhoy*, 2010 WL 2010738 (Ky. App. May 21, 2010), for the proposition that an organization's principal may avoid liability for negligent misrepresentations where a contract governs the parties' relationship in any situation. Rather, the *Tabler* court found no averments other than those warranties made in the contract for the builders promised to build a house free from defects, but the homeowners alleged material defects in its construction. In the absence of any identifiable, actionable misrepresentation other than those made in the contract, the court dismissed those claims against the builder. This is not the situation in this matter. Further, the Court rejects

Defendants' argument that Plaintiff is attempting to retroactively assert a personal guarantee into the contract. Adamitis is not a party to the contract and is not subject to the allocation of risk created by the Representations Provision in that document.

Ultimately, the Court rejects the argument that Adamitis cannot be personally liable in tort to Younger Brothers because Adamitis had a personal duty independent of Active Enterprises' contractual duties not to make material misrepresentations in connection with the parties' transaction, which Plaintiff avers that he breached by personally and actively engaging in misrepresentations and material omissions. *Presnell*, 134 S.W.3d at 580. The motion to dismiss will be denied in this regard.

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss [DE 4] is **GRANTED IN PART** and **DENIED IN PART**.

This the 5th day of April, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge